**Frank GRAY, Plaintiff–Appellant,**

v.

**USX CORPORATION, Defendant–Appellee.**

No. 01–2205.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 2001.

Decided Feb. 15, 2002.

---

Before FLAUM, Chief Judge,
POSNER, and KANNE, Circuit Judges.

### ORDER

Plaintiff Frank Gray is an African–American machinist with defendant USX Corporation. Gray filed suit against USX, alleging racial discrimination, retaliation for filing an EEOC complaint, and breach of a settlement agreement between the parties.

Gray works for USX at their Gary, Indiana plant, machining spare parts for steel production equipment. During all relevant times, labor agreements between USX and the United Steelworkers of America governed Gray's employment. These agreements addressed, among other things, USX's management of the workforce, the work schedule, the filing of temporary vacancies, and wage and incentive rates.

USX paid machinists an extra incentive beyond an employee's normal wages if they worked on certain machines ("incentive machines"). Pursuant to an agreement between USX and the union, a USX supervisor filled vacancies on incentive machines in his discretion based on a sign-up list ("fill-in" list). When a temporary vacancy on an incentive machine arose, the machinist who had first signed up for that particular machine and shift was given the opportunity to work on the machine. If more than one machinist signed up for a particular machine, priority was determined by seniority. The USX supervisor often chose not to fill temporary vacancies, and thus, incentive machines were often left vacant.

The labor agreements also set forth a grievance procedure for employees with

disputes regarding incentive machine assignments. If it was determined that an error was made in a fill-in assignment and that a less-senior machinist had been erroneously assigned to the machine, USX would pay the injured party the difference in pay between what he received and what he would have received if he had worked on the incentive machine. The record indicates that such mistakes were common at USX, and grievances were routinely filed and satisfied.

On several occasions, Gray filed a grievance when a less-senior machinist was given an assignment ahead of him. USX settled these grievances by paying Gray the lost incentive wage. On April 13, 1998, Gray filed a charge with the EEOC, alleging discrimination on the basis of race and claiming that the misassignments were racially motivated. Gray also alleged that by discriminating against him through fill-in list assignments, USX had breached a settlement agreement between the parties that provided that USX would assure that Gray's seniority rights were enforced.[1] On May 22, 1998, Gray filed another charge of discrimination with the EEOC, alleging retaliation for the filing of his April 13 EEOC charge. After the EEOC issued a Notice of Right to Sue for each of Gray's EEOC charges, Gray filed suit in the Northern District of Indiana. Before the district court, Gray asserted that USX discriminated against him with regard to the manner in which USX distributed incentive machine assignments. Initially, Gray argued that on a number of occasions USX left incentive machines vacant rather than permitting Gray to work the machines and that USX denied him the opportunity to work on the machines of his choice. Next, Gray asserted that USX allowed non-African-American employees with less seniority than Gray to fill-in on incentive ma-

chines instead of Gray. Gray also claimed that he was retaliated against for filing his April 13 EEOC claim. Finally, Gray asserted that USX breached a settlement agreement between the parties by assigning less-senior machinists to vacant incentive machines.

The district court entered summary judgment in favor of USX, holding that "the uncontroverted evidence demonstrat[ed] that errors in the [fill-in list] assignment process were a fact of life at USX and that these errors were made with respect to white and black employees alike." The district court then noted that USX developed a grievance policy to specifically address these errors. Next, the district court held that summary judgment was proper because Gray had presented no evidence that similarly-situated machinists were treated differently. The district court concluded by rejecting Gray's remaining claims, holding that the denial of incentive pay did not constitute an adverse employment action.

We review a grant of summary judgment de novo, viewing all of the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party. See Cent. States, Southeast and Southwest Areas Pension Fund v. White, 258 F.3d 636, 639 (7th Cir.2001). Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Cengr v. Fusibond Piping Sys., Inc., 135 F.3d 445, 450 (7th Cir.1998) (quoting FED. R. CIV. P. 56(c)).

■ Although Gray attempts to frame his racial discrimination claim in several different ways, the only issues that war-

1. The settlement agreement resulted from a matter not relevant to this appeal.

rant discussion involve the filling of vacancies on incentive machines. To establish a *prima facie* case of racial discrimination, Gray must show that (1) he was a member of a protected class; (2) he was qualified for the job in question or was meeting USX's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) USX treated similarly-situated persons not in the protected class more favorably. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir.1999).

■ Gray contends that due to his race, USX intentionally passed over him on the fill-in list and intentionally left machines vacant instead of assigning Gray to work on them. His claim fails, however, because he has not shown that similarly-situated, non-African-American, USX machinists were treated more favorably. Although Gray has presented evidence that less-senior machinists were assigned ahead of him on occasion, the record is replete with evidence that these errors were made with respect to African–American and non-African-American machinists alike. Indeed, there is no dispute that USX developed its grievance policy in order to address these errors. Summary judgment is appropriate because Gray has failed to show that errors in assignment were made with greater frequency in his case than in the cases of non-African-American machinists. Further, Gray has presented no evidence that he was treated differently through the grievance policy. Indeed, the record indicates that on several occasions, USX paid Gray lost incentive wages because it had erred by not assigning Gray to an incentive machine, and therefore, his claim must be rejected.

**2.** Although Gray also asserts a retaliation claim, this argument is without merit and does not warrant discussion.

Gray also asserts that USX breached a settlement agreement between the parties. That agreement provides that USX would "assure that [Gray's] rights will be preserved in all terms and conditions of employment, including seniority rights." Gray contends that USX violated the agreement through the discriminatory activities alleged by Gray. Because we find that USX has not engaged in any discriminatory activities, this claim is without merit.[2]

For the foregoing reasons, the judgment of the district court is AFFIRMED.